(No. 5326—Claimant )

JAMES P. SHERLOCK CONSTRUCTION COMPANY, INC., Claimant,
*vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed April 12, 1974.*

FISCHER, GUY, JACOBSON & PAUKER, Attorneys for Claimant.

WILLIAM J. SCOTT, Attorney General; ZEAMORE A. ADER, Special Assistant Attorney General, for Respondent.

BURKS, J.

In this action, claimant seeks payment of $3,172 for services rendered under an alleged oral contract with the respondent.

It appears from the evidence that, on July 27, 1963, respondent requested claimant to prepare plans and specifications for alterations to be made on behalf of the respondent in the Museum of Science and Industry Building in Chicago. The space was to be occupied by the Chicago Division of the Illinois Civil Defense Agency, which was considering moving its office from the first floor of the Museum of Science and Industry to the basement of that building. The record shows that claimant did prepare certain plans and specifications for the said alterations and submitted them to the Illinois Civil Defense Agency. Claimant alleges that, under an oral contract with the respondent, claimant was to be paid as

a fee for these services an amount equivalent to 7% of the projects budgeted cost of $45,318.

Respondent contends that claimant's alleged oral contract did not conform to legal requirements; that this claim was not proved by a preponderance of the evidence; acd that the plans submitted by the claimant were, in effect, drawings which claimant was to have used on the proposed work. As it developed, bids were never asked on the job because the Civil Defense Agency, instead of moving into the basement of the Museum of Science and Industry, decided to move its facilities to Springfield.

Since the issue as to whether claimant had a valid oral contract is primarily a question of fact, we will summarize the testimony of the key witnesses who appear to be competent and knowledgeable as to the facts, and the exhibits which have the most probative value.

Lawrence Murphy, a witness for the claimant, was Staff Engineer for the State of Illinois and was, from 1961 to 1964, Chief Engineer for the Civil Defense Agency at its headquarters in the Museum of Science and Industry. He was on loan to this agency from the Department of Public Works and Buildings. Murphy testified that claimant had previously performed various repair jobs for the Civil Defense Agency on oral contracts, jobs in the neighborhood of $500 or $600. Murphy said he never had occasion to question claimant's reliability, the quality of claimant's work nor the reasonableness of the price claimant charged, which was always discussed in advance if over $100.

Murphy further stated that, at various meetings, he and Chauncey Carveth, Executive Director of the Civil Defense Agency, indicated affirmatively that claimant was to be paid for preparing and submitting the plans

and specifications. Murphy's statements to the claimant were always on direct order of Mr. Carveth, the Executive Director. He stated that the claimant's representative, Edson Lee Casper, altended approximately 15 meetings which mainly involved changes in the plans and specifications in order to cut down the cost of the project. Murphy further testified that it would be unusual for a bidder, in bidding on a job, to submit detailed plans and specifications to the party asking for bids, as respondent seems to contend in its theory of the case. Plans and specifications, of course, are customarily submitted to the bidder by the party asking for the bids.

Murphy further stated that, although claimant might bid on this job, claimant was hired only for the work of preparing the plans and specifications, and that the work which claimant did was necessary to determine costs.

Henry Zedd, subpoenaed as a witness for the claimant, was Chief of Field Operations for the Civil Defense Agency during the period of August, 1961 to November, 1964. His duties included the preparation of the budget for the Civil Defense Agency. Zedd testified that he prepared a memorandum on September 17, 1963, indicating that, as of the end of September, there was $45,456.64 available for the renovation job at the lower level of the Museum of Science and Industry Building. This memorandum was placed in evidence as claimant's Exhibit No. 5. Zedd was never present when there was a firm arrangement established with the claimant for drafting the plans and payment for this service.

Edson Lee Casper, President of claimant corporation, testified that claimant had done 8 or 10 jobs for the Civil Defense Agency, and that in only one case was there a written contract. He testified that he was con-

tacted by Lawrence Murphy of the Civil Defense Agency and was told of the proposed renovation of the lower level of the Museum of Science and Industry Building, and that he was being retained to prepare the specifications for the alterations. He stated that, in discussing his fee, he informed Mr. Murphy that the customary charge for engineering, architectural work and alterations was around 7%. Casper said he was told that he might be invited to bid on the job, but he may be disqualified from bidding if he prepared the plans and specifications. Nevertheless, he said, it was clearly understood that claimant's company was being engaged merely to prepare plans and specifications. The price to be paid his company was a percentage figure of 7% which Mr. Casper said was agreed to by both Lawrence Murphy and Chauncey Carveth for the respondent; that subsequently, in connection with this project, Casper met with Civil Defense Agency personnel 25 or 30 times; that three or four stages of the plans were presented to the Civil Defense Agency on which were made revisions, alterations and changes for various purposes; that subsequently, the final drawings were presented to the Agency. Casper stated the invoice of $3,172 submitted by claimant was arrived at by taking 7% of the budgeted cost of the alterations; that this was the customary and usual practice. Casper estimated that he spent 60 to 80 hours on the project.

Col. Donovan M. Vance, Director of Civil Defense for the State of Illinois, although called as a witness for respondent, identified many of claimant's exhibits which tend to support claimant's contentions. However, Col. Vance testified that he did not authorize Mr. Carveth or anyone else in his office to enter into any form of contract with anyone to draft plans and specifications for the basement area. He stated that he did authorize his personnel, including Mr. Murphy, to review the matter and

find out what it might cost to renovate and rebuild the basement for the Civil Defense Agency's use. He admitted that Murphy was expected to seek outside help and assistance from the claimant, Sherlock Construction Company, but just to get a "horseback estimate" of the cost from the plans he said Murphy and his assistant had prepared. He admitted that he participated in discussions with claimant's president, Mr. Casper, and claimant's staff regarding the remodeling and the suitability of the area to the Civil Defense Agency and the price of the remodeling. Col. Vance said he considered Sherlock Construction Company a remodeling firm; that claimant had previously done work for the Civil Defense Agency and the Museum of Science and Industry, and that claimant was held in high regard by the Museum of Science and Industry.

Edson Lee Casper, recalled as a witness for claimant, contradicted the most pertinent part of Col. Vance's testimony by stating that respondent's Lawrence Murphy never prepared any sort of detailed plans in connection with the renovation project at the Museum. He said that respondent's Exhibit No. 1 merely shows the then existing conditions in the space presently occupied and to be occupied; that it is called a line drawing, and a contractor could not possibly bid on a job based on these drawings. No alterations or new work are indicated on these drawings of the respondent. Casper said that respondent's drawings, referred to by Col. Vance, were of no value, and that they were never even submitted to the claimant.

Mr. Casper confirmed, as Henry Zedd had earlier testified, that Col. Vance became ill shortly after his appointment as Director of Civil Defense but said that Col. Vance was present at one of the early discussions on

the renovation project and again before the plans were finished. Casper said that Col. Vance personally ordered certain items taken out of claimant's plans.

Warren Rukgaber, an auditor with the Office of Civil Defense, the only other witness for the respondent, merely testified as to certain lapsed appropriations of the Civil Defense Agency budget for the 1961-1963 biennium and as to certain supplementary request for funds for the renovation project in question. His testimony had no significant bearing on the issue before us.

Examining claimant's exhibits in the light of the oral testimony, we find the following facts clearly established:

In August of 1963, claimant finished the preparation of the plans and specifications and turned them over to the Civil Defense Agency. [Cl. Ex. 1 and 2]

On September 3, 1963, claimant submitted its invoice, in the amount of $3,127 to the Agency for the services which had been performed. [Cl. Ex. 8].

On September 4, 1963, Colonel Vance wrote to Francis S. Lorenz, Director of the Department of Public Works and Buildings at Springfield, requesting that "drawings and specifications for work to be completed in the Museum be reviewed". [Cl. Ex. 17]. We have noted that Col. Vance testified at the hearing, in June of 1968, that the plans he referred to in this letter were plans drawn by Mr. Murphy. However, both Mr. Murphy and Mr. Casper testified that Mr. Murphy had not prepared plans. Hence, we conclude that the only plans and specifications that had been prepared were done by the claimant.

On October 24, 1963, the Agency wrote to the claimant [Cl. Ex. 9] enclosing a voucher in the invoiced

amount. In this letter the claimant was advised that "upon receipt of this signed Invoice-Voucher, it will be forwarded by us to Springfield for payment". [This letter was signed "For the Director — Letha T. Black, Administrative Assistant"].

Claimant completed respondent's voucher and returned it on October 28, 1963. After some time passed and no payment was received, claimant wrote to Col. Vance on January 31, 1964, and requested payment. Failing to receive a response, Mr. Casper wrote to Col. Vance on March 27, 1964 and again requested payment.

On April 7, 1964, Col. Vance replied by letter advising that payment had not been made because he had no evidence of authorization by the Agency for the work done by claimant. [Cl. Ex. 13].

Upon receipt of that letter from Col. Vance, claimant secured and submitted a letter from Mr. C. E. Carveth, Executive Director of the Agency.

The court takes notice that the said letter of Mr. Carveth, dated May 5, 1964, was attached as Exhibit A in claimant's Bill of Particulars. Mr. Carveth was traveling in the Far East at the time of the hearing and could not be personally present. His said letter, however, was admitted into evidence as claimant's Exhibit 14. The Assistant Attorney General, Mr. Morton Zaslavsky, representing the respondent, carefully examined the letter and stated that he had no objection to its admission [Tr. p. 123]. We find Mr. Carveth's letter to be of sufficient importance to recite its full text, which reads as follows:

"May 5, 1964.

James P. Sherlock Construction Co., Inc.
6253 South Kimbark
Chicago, Illinois

Attn: Mr. Lee Casper

Re: Plans and specifications for alterations in space in the Museum of Science and Industry to be occupied by Civil Defense Agency.

"Gentlemen:

This will confirm to you the following facts:

Prior to July 27, 1963, Mr. L. E. Murphy and I, as authorized officers of the Illinois Civil Defense Agency, on behalf of the Agency, authorized and requested you to prepare plans and specifications for the intended alterations. We informed you on behalf of the Agency that you would be paid a fee for your services, consisting of 7% of the budgeted cost, or of any contract price, for doing the work, whichever would be lower.

Accordingly, you prepared a preliminary layout and a cost estimate, which you presented to a meeting of our executives on July 29, 1963, at which meeting the following persons attended:

| | |
|---|---|
| Col. D. M. Vance | State Director of Civil Defense |
| C. Carveth | Mr. Zedd |
| L.E. Murphy | Mr. Briton |
| Mr. Clark | |

At this meeting your retainer on the basis above stated was approved, by Mr. Murphy and myself upon our receiving the approval of Col. Vance, State Director of Civil Defense. It was agreed by our committee that this arrangement was independent of the fact that you might later be a successful (or unsuccessful) bidder on the contract work.

At the meeting certain changes in the plans, speci-

fications, and budget figures were agreed upon and you were then requested to proceed accordingly to prepare the final plans and specifications, which you did.

There is no question but that you were authorized to do the work for which you submitted an invoice, and I know of no reason why the same should not be paid, since your services were satisfactorily performed in accordance with your retainer.

Very truly yours,

s/ C. E. Carveth
*C. Carveth* "

Respondent argues in its brief that this claim is in violation of the Statutes of the State of Illinois and, accordingly, there is no legal basis for recovery. Respondent cites an Illinois Statute in force at the time in question which reads as follows:

"Sec. 132.9. Renovations costing $2,500 or more — Supervision of Architect or Engineer. Sec. 9. Any contract entered into or expenditure of funds by a State Agency for remodeling, renovation or construction, involving an expenditure in excess of $2,500.00, shall be subject to the supervision of a licensed architect or engineer and *no payment shall be paid* for such remodeling, renovation or construction *unless* the *vouchers* or *invoice* for such work *is accompanied by a written certificate of such licensed "architect or engineer that the payment represents work satisfactorily completed: . . ."* (*Ch. 127, Ill.Rev.Stat., 1961*).

Respondent states that this is a claim in excess of said $2,500 and claimant has not proved that the voucher referred to in claimant's Exhibit 9 was "accompanied by a written certificate of a licensed architect or engineer" that the work was satisfactorily completed.

We note from the records that, although Mr. Casper of James P. Sherlock Construction Company was neither

an architect or licensed engineer, claimant had the services of a licensed engineer who worked for the claimant in this matter on a retainer and certified the plans. We refer to the following statement from a letter of October 4, 1963 [Cl. Ex. 18] from Charles F. Pope, Executive Assistant, to Lorentz A. Johanson, Supervising Architect:

"They have had drawings and specifications prepared by John J. Weider, Structural Engineers, 343 South Dearborn Street, Chicago, Illinois through the Sherlock Construction Company who had been referred to them by the management of the Museum of Science and Industry in which the Agency is housed."

The same letter from Mr. Pope further stated,

"The available funds are $45,000.00, including professional fees for Architects or Engineers. Col. Clark also advised they had a verbal agreement with Sherlock Construction Company, or Mr. Weider, to pay something over $3000.00, or approximately 7½% for plans and specifications. These plans and specifications were prepared under the direction of a Mr. Lawrence Murphy who, at that time, was assigned to the Agency as a technical adviser, but is no longer with them. Mr. Murphy, at the time, was I believe on leave from the Division of Highways and is working in that Division again."

"Mr. Weider is a registered engineer in the State of Illinois, in good standing. Since the Agency is anxious to have this work done at the earliest possible time, . . . . . and Mr. Weider has already billed the Agency for his fee, . . . we suggest that arrangements be made for the Division to work with him to produce satisfactory contract documents."

In further support of its position, certain cases and statutory provisions are cited by respondent which can be distinguished from the instant case. For example, respondent cites, *Schnepp and Barnes, a corporation,* v. *State,* 10 C.C.R. 609, which involves a situation in which this court says at page 616, that it was considering an award for "printing for which no contract was held by the claimant". In the instant case, we find that the claimant did have a contract. It had an oral contract to do the work requested. There was ample testimony to support this fact. Claimant had previously done work for the respondent under an oral contract on numerous occasions.

The claimant's contract called for the production of

drawings preliminary to the commencement of an anticipated renovation project. The agreement was not for the performance of the renovation work itself nor for supplying the materials to be installed. The claimant's work was performed antecedent to the coming into being of the type of circumstances governed by the statutory provisions cited by the respondent. The claimant's work was not done as part of the renovation itself. That work was to be done pursuant to a separate contract to be let after bids were taken. This appears to remove the case at bar from the statute cited by the respondent, *Ch. 127, Sec. 5.05, Ill.Rev.Stat., 1961*, which purported to give the Supervising Architect in the Department of Public Works and Buildings exclusive power to contract for construction and repairs of state buildings. Moreover, the letter of Mr. Pope, Administrative Assistant, quoted above, appears to have ratified the contract authorized in this case.

Respondent also calls our attention to *Illinois Central Railroad Company* v. *State*, 10 C.C.R. 493, which deals with a claim based on a contract entered into by the railroad with the "ground superintendent" of the Kankakee State Hospital for repairs which were made and which had a definite price attributable to them prior to the time the work was done. This court favorably considers the argument that the statutes then in force conferred the contractual authority on the Director of the Department of Public Welfare and not the grounds superintendent, and that no enforceable contract resulted. In the case at bar, however, the claimant acted with the Director's approval after being given the express order to proceed by the Executive Director, who had contractual authority.

The money for the claimant's compensation was to come from within the funds generally budgeted and

appropriated to the Civil Defense Agency for this purpose. Zedd, who prepared the budget request, testified that it included money for plans and specifications in connection with the renovation. However, the renovation project was abandoned; the Civil Defense Agency later moved its office to Springfield; and the funds that had been appropriated for "contractual services" for the renovation project lapsed.

Respondent does not challenge or question the reasonableness of the 7% engineering fee in this case, but merely says there was no specified budgeted cost on which to compute the amount claimed. This overlooks the testimony of Mr. Zedd who prepared the budget which included a figure of $45,456.64 for the renovation job. Also the letter of Mr. Pope of the state architect's office who wrote, "The available funds are $45,000.00 including professional fees for Architects and Engineers".

This court has in no way altered its opinion expressed in *Illinois Central Railroad Company, v. State*, 10 C.C.R. 493, at page 497, that informal agreements such as here alleged open the door to serious abuses of public funds, are dangerous to the public good and are not be condoned. However, the question before us is not whether such oral contracts should be condoned. We believe there are now adequate safeguards in our statutes to preclude a repetition of the circumstances that occurred in this particular case.

Here the only question for us to determine is whether claimant has proved its claim that it had a valid oral contract, as alleged, that should be enforceable by an award in this court. On this issue, we find that claimant has proved its claim by a preponderance of the evidence and is entitled to an award in a sum equal to 7% of

$45,000, the smaller of the amounts shown in the evidence to have been budgeted for the renovation project.

Therefore, for services rendered in accordance with its contract, claimant is hereby awarded the sum of Three Thousand One Hundred Fifty Dollars ($3,150.00).