(No. 96-CC-1806–)

DENNIS CURTIS BOILER REPAIR, INC., Claimant, *v.*
THE STATE OF ILLINOIS, Respondent.

*Opinion filed January 5, 1999.*

ROBERT WAGNER, for Claimant.

JIM RYAN, Attorney General (MICHAEL F. ROCKS, Assistant Attorney General, of counsel), for Respondent.

## OPINION

EPSTEIN, J.

This contract claim is before the Court for decision following trial to our Commissioner, Elizabeth M. Rochford, on January 15, 1998, on the complaint of the Claimant against the Respondent's Department of Corrections ("IDOC") for work performed at IDOC's Sheridan Correctional Center, alleging breach of contract and seeking damages of $21,408.72. The matter is before us on the Claimant's complaint, the trial record, and the Commissioner's report. We now render our decision.

### The Facts

Dennis Curtis, the Claimant's owner, testified that the Claimant is a boiler repair and welding company that had performed services for the Respondent on approximately

100 prior occasions. In the regular course of business, work performed was billed on a time and materials basis to IDOC. At the relevant times, Claimant's hourly rate was $52.50 and overtime for time over eight hours daily; work performed on weekends and holidays was billed at $78.75 per hour.

On December 21, 1994, Sheridan Correctional Center Chief Engineer Darryl Johnson phoned Dennis Curtis requesting urgent boiler repair at the facility. Claimant sent a crew to the facility to assess the problem. Services were performed and the leaks were temporarily stopped.

In the first week of 1995, Claimant received another call from Johnson. At Respondent's request, Claimant dispatched another crew on January 7, 1995, to perform another temporary repair. Respondent advised Claimant that a more expensive repair was inevitable but the repair could not be fully assessed without dismantling the boiler. Following a more thorough examination of the boiler later, it was determined that extensive repairs were necessary. Respondent's agents authorized the repairs. The specific repairs performed were detailed in Claimant's testimony and the work passed an independent inspection.

Following the conclusion of the work, Claimant prepared a bill which detailed charges for time spent at the prison, time spent traveling to and from the prison, time spent in the Claimant's shop, material preparation, fabrication and handling since services were performed. The bill also included fees for costs advanced by Claimant for materials in the amount of $4,761.67 and inspection fees in the amount of $1,343.30 (see Claimant's exhibits 9-13).

The bill included charges for 138.5 hours of regular labor at $52.50 and 102 overtime hours at $78.75. Claimant testified that the overtime hours were necessary due

to the "emergency" nature of the repairs. Claimant also testified that the workers often experienced delays upon arrival at the prison while they waited to gain entry and the paperwork was completed or the truck was searched.

The final bill was computed as follows:

| | | |
|---|---|---|
| 138.5 | Regular Labor hours at $52.50 | $ 7,271.25 |
| 102 | Over-time Labor hours at $78.75 | $ 8,032.50 |
| | Materials (costs advanced) | $ 4,761.67 |
| | Inspection Fees (costs advanced) | $ 1,343.30 |
| | Total Bill | $21,408.72 |

The Respondent's departmental report was prepared by Vernon Sebby who testified at trial. The departmental report disputed the total bill but agreed to pay $14,699.03 of the claim.

Sebby testified at trial that, in arriving at the figure, he allowed for reimbursement of materials and inspection fees and for regular labor hours based on the institutional sign-in log and that he granted a total of two hours per day for travel time to and from the institution. The report concluded that Claimant was entitled to be paid for 118.75 of regular labor hours and 4.25 of over-time labor hours. Sebby admitted that he did not consider whether the work was performed on Saturday or Sunday and did not consider work performed in the Claimant's shop.

## Discussion

On this record, it is undisputed that the boiler repairs to the IDOC correctional facility in this case were necessitated and performed on an emergency basis. This is crucial, of course, as there does not appear to be a supporting written contract between Claimant and Respondent.

The Respondent hired Claimant to perform the repair services and to do so on an emergency basis, which is an exception from the normal State contracting procedures

and from the requirement of a written contract to support the claim. Emergency contracts—including contracts for emergency services to maintain State facilities—may be oral. Although State liability on oral contracts is disfavored and extraordinary, it is still within the law and is to be enforced by this Court when proven. *James P. Sherlock Construction Co., Inc. v. State* (1974), 29 Ill. Ct. Cl. 343. The emergency contract in this case is not disputed.

Moreover, the Claimant had done considerable work for IDOC on many many prior occasions, and thus, both Claimant and IDOC had an established basis and well settled terms on which to contract orally. Although this is not a dispositive factor, this is a significant circumstance that satisfies some of the strongest reasons for which Courts are reluctant to enforce alleged oral contracts.

The Respondent acknowledges its liability for Claimant's costs advanced for materials and inspection fees. IDOC acknowledges its liability for regular labor hours actually spent inside the prison and for a total of two travel hours per day. However, Respondent neglects to consider the actual hours spent in travel to and from the site and the time spent gaining access to the prison. This is a dispute over the reasonable terms of the contract, rather than on the existence of an obligation to compensate the Claimant according to its established rates. Respondent also ignores the work time spent off-site in Claimant's shop preparing and fabricating the necessary materials.

We believe that the Claimant has met his burden of establishing his regular billing practices, to which the Respondent must be held to have agreed in engaging Claimant. Claimant's testimony and the supporting documentation presented at trial convincingly established the necessity of preparatory work off-site in Claimant's shop, in addition to the repair work performed on-site. The testimony established that the worker travel time was actually three hours a

day and that the workers met with security delays upon arrival and departure at the prison site. In this light, and given the absence of any evidence by the Respondent of the unreasonableness of such charges or of an established practice of charging differently for the kind of work and time here disputed, we conclude that the Claimant must prevail on the disputed charges.

Moreover, as both parties have acknowledged the emergency nature of the work performed, our review of the work performed demonstrates to us that it was entirely foreseeable that over-time charges for hours spent in excess of eight regular hours and on Saturdays and Sundays would be necessary and would be charged at the specified and established rates.

This Court does not easily disregard a departmental report, although it is only prima facie evidence of the facts asserted. However, the departmental report in this case was prepared without due consideration for the legitimate factors and established practices shown by Claimant. Claimant's testimony and supporting documentation convincingly support its request for payment of $21,408.72, which will be our award in the absence of contrary persuasive evidence.

### Conclusion and Award

For the foregoing reasons, the Court concurs with our Commissioner, finds the Respondent to be liable to the Claimant in the amount of $21,408.72, which will be our judgment in this case.

Claimant Dennis Curtis Boiler Repair, Inc. is awarded the sum of $21,408.72 in full and complete satisfaction of this claim.